Corliss Lamont and Margaret I. Lamont v. Commissioner.
Lamont v. Commissioner
Docket No. 89606.
United States Tax Court
T.C. Memo 1964-2; 1964 Tax Ct. Memo LEXIS 332; 23 T.C.M. (CCH) 3; T.C.M. (RIA) 64002; January 8, 1964
Isidore R. Tucker, 32 Broadway, New York, N. Y., for the petitioners. Richard B. Nashel, for the respondent. WITHEY
Memorandum Findings of Fact and Opinion WITHEY, Judge: A deficiency has been determined in the income tax of petitioners for the taxable year 1957 in the amount of $5,286.84. The issues to be decided as set forth in the pleadings are (1) whether deductions taken in petitioners' return for 1957 as business losses attributable to petitioner Corliss Lamont's activities as author, teacher, lecturer, and publisher were properly disallowed by respondent and (2) whether disallowed charitable deductions were properly disallowed. Findings of Fact Such facts as have been agreed upon by the parties are found as stipulated. The petitioners, Corliss Lamont and Margaret J. Lamont, husband and wife, who reside at 450 Riverside Drive, New York 27, New York, filed a joint income tax return for the calendar year 1957 with the district director of internal revenue, Lower Manhattan, New York. Petitioner as hereinafter used has reference to Corliss Lamont. In 1957, and for all years beginning at least with *334 the year 1950, petitioners were wealthy people reporting gross income largely from dividends, interest, and capital gains, ranging from $94,000 to $289,000 through 1956. Petitioner's family background environment was literary and he has, since his youth, been interested in writing. Petitioner expended the sum of $11,388.98 during the calendar year 1957, which expenditures constituted the expenses incident to his activities as author, writer, teacher, and lecturer and were claimed as a business loss in computing his 1957 taxable income. Petitioner attended Harvard University, where he concentrated in English, writing, and teaching; was an editor of the daily student newspaper, "Harvard Crimson," for 3 years, and an editor of the "Harvard Advocate," a monthly literary journal, for one and one-half years, for which he wrote various articles. While attending Harvard undergraduate college, he wrote an article for, and which was published by, the New York Herald Tribune. The newspaper compensated him for these services. Petitioner was graduated from Harvard in 1924 and spent a year at New College, Oxford, England, studying philosophy, politics, and economics, continuing his studies *335 with a furtherance of his literary interests by associations with prominent British writers and philosophers. Thereafter, petitioner attended Columbia University Graduate Schools; he started teaching philosophy at Columbia in 1928 and obtained his Ph. D. in philosophy from Columbia in 1932, while teaching at that university during those 4 years. The University compensated him for his teaching services. As a candidate for his Doctorate at Columbia, petitioner wrote a thesis which was published commercially. Thereafter, during the academic year 1957-1958, petitioner taught at Harvard University, Cornell University, Columbia University, and New School for Social Research, for which the schools compensated him. In addition to his teaching activities, petitioner lectured, principally on the topics of Philosophy, Civil Liberties, and International Affairs. These lectures were given in various areas in the United States and Canada, as well as the New York area. Every 2 or 3 years he embarked on a speaking tour across the country. Petitioner was compensated for these lecture services. Petitioner was a member of the following philosophical and professional organizations: The American *336 Philosophical Association The American Humanist Association
Phi Beta Kappa Society
The American Association for the Advancement of Science
The American Civil Liberties Union The Emergency Civil Liberties Committee Alumni Associations of Columbia University and Harvard College Faculty Club of Columbia Between 1936 and 1960 petitioner edited the following books, which were published by the publishers indicated: MAN ANSWERS DEATH: An Anthology of Poetry, Published G. P. Putnam Sons, N. Y. 1936. 2nd Rev. Ed. enlarged Philosophical Library 1952 - 283 pages and 330 pages. DIALOGUE ON JOHN DEWEY: Published Horizon Press, Inc. 1959 - 155 pages. DIALOGUE ON GEORGE SANTAYANA: Published Horizon Press, Inc. 1959 - 115 pages. A HUMANIST SYMPOSIUM ON METAPHYSICS, 1960 - Published American Humanist Association - 40 pp. Two of the books on philosophy have gone into paper-back editions. During the period from 1932 to 1959 petitioner was the author of the following books, which were published by the publishers indicated: ISSUES OF IMMORTALITY: A STUDY IN IMPLICATIONS. Published H. Holt & Company 1932 - 198 pages, Half Title - Religion and the Modern Age - Issued also as *337 Ph. D. Thesis Columbia University. THE ILLUSION OF IMMORTALITY: Published G. P. Putnam Sons 1935 - 194 pages - 2nd Ed. Philosophical Library 1950 - 3rd Rev. Ed. 1959. YOU MIGHT LIKE SOCIALISM: A WAY OF LIFE FOR MODERN MAN: Published Modern Age Books 1939, 308 pages. THE PEOPLES OF THE SOVIET UNION: Harcourt Brace & Company, 1946 - 229 pages. A HUMANIST FUNERAL SERVICE: Published Beacon Press, 1949 - 32 pages - 2nd Ed. Horizon Press, 1954. HUMANISM AS A PHILOSOPHY: Published New York Philosophical Library, 1949 - 368 pages, 2nd Ed. 1950; 3rd Ed. 1951; 4th Ed. 1957, as The Philosophy of Humanism. THE INDEPENDENT MIND: ESSAYS OF A HUMANIST PHILOSOPHER - Published Horizon Press 1951 - 167 pages. SOVIET CIVILIZATION: Published New York Philosophical Library, 1952 - 433 pages - 2nd Enlarged Ed. 1955 - 447 pages. FREEDOM IS AS FREEDOM DOES: CIVIL LIBERTIES TODAY: Published Horizon Press, 1956 - 336 pages. 2nd printing 1959 with a Foreword by Bertrand Russell. Petitioner was also the author and publisher of a series of 15 pamphlets started in 1952, called "The Basic Pamphlet Series," which consisted of short popular treatises or treatments of various subjects, sold at 10 *338 cents an issue. Petitioner had these pamphlets printed by a printshop and advertised and sold these himself, keeping his own stock of these pamphlets for sale upon request. Since petitioner's graduation from Harvard he has been a frequent contributor as author of articles in magazines and periodicals. Petitioner's books and Basic Pamphlet Series have been advertised in various newspapers, including the New York Times. The publishers of his books advertised his books, and occasionally petitioner himself would advertise them, principally in the New York Times, in order to get his books "moving." Petitioner's works have been reviewed, commented upon, and written about in a variety of publications, among which are: New York Times Book Review; New York Times; New York Herald Tribune; New York World Telegram; Christian Science Monitor; The Antioch Review; Saturday Review of Literature; New Republic; and Commonweal For several years prior and subsequent to the year 1957, petitioner has been invited to, and has made, radio and television appearances wherein he was asked to participate as a guest-commentator on various public issues, to be interviewed, or in an autobiographical *339 capacity, wherein he would be introduced by the master of ceremonies or interviewer as a teacher of philosophy or as a writer of a certain book or books, depending upon the subject of the broadcast. In addition to his publishing venture with regard to "Basic Pamphlets," over the years, petitioner's publishing activities included: (a) Limited partner and investor in the "Nation Magazine," (b) Investor, 25 percent stockholder, in the New York City newspaper "The Daily Compass," and making loans to try to get the newspaper on a self-sustaining basis, (c) Investor, 25 percent stockholder, lender, and office-member of the Board of Directors, in and to "Trade Union Service," a newspaper enterprise publishing a number of trade union newspapers, (d) Investor in a newsweekly, "The National Guardian," (e) Officer-director and investor of and in "Horizon Press," a publishing house. Petitioner conducted his professional activities in a businesslike manner, giving attention to practical business details, keeping track of his writing, lecturing, and teaching fees and expenses, by use of up-to-date files and records, recording the same on a regular set of books kept on a double entry *340 bookkeeping system and checkbooks. He examined and kept watch of expenditures both before and after their being incurred, including the larger expenses for advertising and secretarial and editorial services to keep them in line competitively, obtaining galley and page proofs on his publications, and keeping files of documents, notes, research, and papers on his professional work. The American Humanist Association, an organization trying to educate people on the humanist philosophy, has and continues to purchase and distribute some of petitioner's books throughout the United States. Some of petitioner's books have become standard works, as textbooks, in college and university courses, two of which have gone into paper-back editions. (d) Investor in a newsweekly, "The National Guardian," (e) Officer-director and investor of and in "Horizon Press," a publishing house. Petitioner conducted his professional activities in a businesslike manner, giving attention to practical business details, keeping track of his writing, lecturing, and teaching fees and expenses, by use of up-to-date files and records, recording the same on a regular set of books kept on a double entry bookkeeping *341 system and checkbooks. He examined and kept watch of expenditures both before and after their being incurred, including the larger expenses for advertising and secretarial and editorial services to keep them in line competitively, obtaining galley and page proofs on his publications, and keeping files of documents, notes, research, and papers on his professional work. The American Humanist Association, an organization trying to educate people on the humanist philosophy, has and continues to purchase and distribute some of petitioner's books throughout the United States. Some of petitioner's books have become standard works, as textbooks, in college and university courses, two of which have gone into paper-back editions. Petitioner is generally familiar with the business aspects of writing, lecturing, teaching, and publishing. Over the past 33 years, he has regularly devoted his time, effort, and energy largely to writing and lecturing and to a lesser degree to teaching. Petitioner's writing and preparation of his lectures were largely accomplished by him at his own office located in his residence which had a separate telephone, files, secretarial and editorial assistant's offices, *342 and, where necessary for research, at a library. Since petitioner first became engaged in his activities as a writer, author, teacher, and lecturer, he has had: (a) The desire to and did write professionally. (b) The feeling that he was competent to write professionally. (c) The desire to and the belief that he could and did contribute seriously to the advancement of culture in the United States. (d) Ambition to have a best seller which would be extremely successful, as well as have a much larger number of his books sold. So far as shown by the record, petitioner's income from teaching during the calendar year 1957 was about $400 while his income from his other writing and lecturing activities was about $88. The primary purpose of petitioner's lecture activities was to further the aims of the American Humanist Association in particular, and the humanist movement in general. Petitioner's royalties on his books have never offset his expenses in producing them. Since 1952, when petitioner began selling his "Basic Pamphlets," of which he was the author, continuous losses were sustained in every year both prior to and subsequent to 1957. For 12 years preceding 1957, *343 petitioner sustained losses in each year from his combined teaching, writing, and lecturing activities, with the exception of the years 1946 and 1954, in which profits were realized from the aforesaid activities in the respective amounts of $254.38 and $1,500.31. The petitioner engaged in his activities as a teacher, writer, and lecturer because of his basic urge to write, his desire to have the whole world subscribe to his philosophy, a desire to contribute something to mankind and to American culture, the additional desire to continue in these activities, and lastly a feeling that he was competent to write. Ultimate Finding Petitioner's activities as a teacher, writer, lecturer, and publisher, whether taken individually or as a whole, were not engendered by the motive or intent of realizing profits for the calendar year 1957. Opinion Petitioner has claimed net business loss from his activities in the calendar year 1957 as a teacher, author, lecturer, and publisher under section 165(a) and (c)(1) of the Internal Revenue Code of 1954. [1] He has also taken deductions for contributions to certain claimed charities under section 170(a)(1) of the 1954 Code. *344 No contention is made by respondent that the claimed expenses and contributions were not paid and made in the amounts designated in petitioner's return, but he does contend and bases his deficiency upon the claimed fact that petitioner's activities as a teacher, writer, lecturer, and publisher in the year before us were not carried on as a trade or business within the meaning of that term as used in either section 162(a) or section 165 of the Code. From a careful consideration of the entire record we are impelled to the same conclusion. From observation of petitioner as he gave his testimony, his manner of doing so, and the emphasis or lack of the same placed by him upon his motivation for teaching, writing, lecturing, and publishing, it is clear to the Court that such motivation was to only a slight extent if at all *345 related to profit. It is true, we think, that petitioner has always been ready to accept compensation for his services, but only in a passive way. This record does not support his present claim that profit was the factor which caused him to teach, write, lecture, and publish. We are convinced he would have done so without compensation. Petitioner had, early in his life, hitched his wagon to the literary star and was determined to make his mark in that milieu. He was convinced of his own ability to write, teach, and lecture and his motivation in carrying on these activities was, we are satisfied, the personal satisfaction of obtaining and holding the respect of others recognized as qualified in those fields. A trade or business within the meaning of the Code necessitates a substantial profit motivation on the part of the person who is conducting an activity. Henry P. White, 23 T.C. 90, aff'd (C.A. 6), 227 F. 2d 779. In his activities as a teacher, writer, lecturer, and publisher during the taxable year 1957 petitioner was not carrying on a trade or business within the meaning of any section of the Code nor was he engaged in a transaction carried out by him *346 for the production or collection of income within the meaning of section 212(1) of the Code. For the above reasons his computation of net business loss is in error and the respondent's deficiency determination must be sustained in that regard. Petitioner has offered no proof of the deductibility of the contributions to claimed charities referred to in his return and disallowed as such by respondent. He has abandoned this issue. Decision will be entered for the respondent. Footnotes
1. SEC. 165. LOSSES. (a) General Rule. - There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise. * * *
(c) Limitation on Losses of Individuals. - In the case of an individual, the deduction under subsection (a) shall be limited to - (1) losses incurred in a trade or business;↩